IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LINDA B.,[1] | Case No. 3:20-cv-00904-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Linda B. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATION**

Plaintiff was born in August 1960, making her fifty-six years old on December 19, 2016, her alleged disability onset date. (Tr. 37, 75.) Plaintiff has an associate's degree and past relevant work as a physical therapy assistant. (Tr. 37, 54, 68.) In her application, Plaintiff alleged

disability due to depression, anxiety, learning disabilities, and attention deficit disorder ("ADD").[2] (Tr. 76.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on September 5, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 29.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on April 12, 2019. (Tr. 50-73.) On June 5, 2019, the ALJ issued a decision denying Plaintiff's application. (Tr. 29-39.) On April 30, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-7.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-3.)

## II.     THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of December 31, 2021 (*see* Tr. 30) reflects the date on which her insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2021, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 29-39.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 19, 2016, the alleged disability onset date. (Tr. 31.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[U]nspecified neurocognitive disorder, attention deficit hyperactivity disorder (ADHD), persistent depressive disorder, unspecified anxiety disorder, and posttraumatic stress disorder (PTSD)." (Tr. 32.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 33.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels,"

PAGE 4 – OPINION AND ORDER

subject to these limitations: (1) Plaintiff needs to be "limited to understanding and carrying out simple instructions," and (2) Plaintiff needs to be "limited to occasional contact with the general public, co-workers, and supervisors." (Tr. 34.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work. (Tr. 37.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as an industrial cleaner, store laborer, and hand packager. (Tr. 38.)

## DISCUSSION

In this appeal, Plaintiff argues that (1) the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony; and (2) the new medical opinion evidence Plaintiff submitted to the Appeals Council warrants a remand under sentence six of 42 U.S.C. § 405(g). (Pl.'s Opening Br. at 4, 6.) As explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

I.   PLAINTIFF'S SYMPTOM TESTIMONY

   A.   Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and

PAGE 5 – OPINION AND ORDER

convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B. Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 35, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ satisfied that standard here.

The ALJ provided at least two reasons for discounting Plaintiff's testimony. First, the ALJ discounted Plaintiff's testimony because the record revealed that Plaintiff's medications were effective, and Plaintiff improved with treatment. (*See* Tr. 35-36, the ALJ discounted Plaintiff's testimony before noting that Plaintiff "generally responded positively to treatment," and Plaintiff reported that her "medication was effective," her "anxiety and depression medication was working well," and her "medication had helped 'tremendously' with ADHD

PAGE 6 – OPINION AND ORDER

symptoms"). Second, the ALJ discounted Plaintiff's testimony based on conflicting medical evidence. (*See* Tr. 35-36, the ALJ discounted Plaintiff's testimony before noting that Plaintiff's examinations revealed "minimal significant findings" and that "findings of cognitive dysfunction or emotional lability ha[d] been minimal"). These are clear and convincing reasons for discounting a claimant's testimony. *See Dingman v. Saul*, 830 F. App'x 247, 248 (9th Cir. 2020) (holding that the ALJ met the clear and convincing reasons standard and noting that the ALJ discounted the claimant's testimony based on evidence that "showed his symptoms improved with treatment"); *Smith v. Berryhill*, 752 F. App'x 473, 475 (9th Cir. 2019) (holding that the ALJ met the clear and convincing reasons standard and noting that the ALJ discounted the claimant's testimony based on "contradictory medical evidence").

Plaintiff argues that the ALJ erred in discounting her testimony based on evidence that showed her symptoms improved with treatment. (*See* Pl.'s Opening Br. at 4-6; Pl.'s Reply Br. at 1-2). In support of her argument, Plaintiff suggests that her mental health symptoms waxed and waned and that the ALJ erred by picking out a few isolated instances of improvement and treating them as a basis for concluding that Plaintiff was capable of working. (Pl.'s Opening Br. at 5.)

It is well settled that ALJs may not discount a claimant's testimony based on a few isolated examples of improvement. *See generally Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence [in mental health cases], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Here, however, Plaintiff's objections to the ALJ's finding fail to demonstrate reversible error because they amount to advocating for alternatives to the ALJ's rational

interpretation of the record, and because the ALJ's finding is supported by substantial evidence (i.e., more than a mere scintilla of evidence but less than a preponderance). *See Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore d[id] not demonstrate error"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (stating that "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld"); *Wilcox ex rel. Wilcox v. Colvin*, No. 13-2201-SI, 2014 WL 6650181, at *5 (D. Or. Nov. 24, 2014) (explaining that the claimant's "alternative interpretation of the evidence [was] insufficient to overturn the ALJ's findings").

It was reasonable for the ALJ to discount Plaintiff's symptom testimony based on record evidence showing improvement in her mental health symptoms with treatment and medication. The following record evidence demonstrates that the ALJ's interpretation of the record was rational:

- April 28, 2016: Plaintiff reported that she recently visited her daughter and attended a professional conference in Georgia, she was "optimistic," she felt like she was in "a much better place," she was "practicing memory by memorizing [a] new Bible verse every 3 days," and she "notice[d] [an] increased ability to concentrate, focus, and retain information." (Tr. 329.)

- May 25, 2016: Plaintiff that she was "offered a job outright (without an interview) at a home health facility." (Tr. 344.)

- July 14, 2016: Plaintiff reported that her focus was "significantly improved when she takes her ADD medication," she was "enjoying

PAGE 8 – OPINION AND ORDER

- gardening," and she was planning to "travel to Sedona for [a] myofascial release course." (Tr. 328.)

- August 31, 2016: Plaintiff attended a therapy session, Plaintiff's provider noted that Plaintiff's progress had "been great," and Plaintiff reported that she would be "working more, beginning school next week, and continuing to help her father learn new things." (Tr. 337.)

- September 8, 2016: Plaintiff reported that she had "been coming along nicely," she was "happier [and] less anxious," she "functions well with [her] current medication Vyvanse," and her medication "significantly improved [her] self-management and organization." (Tr. 327.)

- January 19, 2017: Plaintiff's provider stated that Plaintiff's anxiety was "[c]ontrolled" and advised Plaintiff to "continue [her] meds as prescribed." (Tr. 374.)

- May 20, 2017: Plaintiff reported that she was "doing well on Effexor," Effexor "seem[ed] like it [was] helping with [her] concentration," and she was "taking classes to help with [her] memory [and] making progress." (Tr. 365.)

- September 25, 2017: Plaintiff reported that she was doing well, feeling better on an increased dosage of Effexor, and "concentrating well and staying on task," and Plaintiff's provider noted that Plaintiff did "not appear to be depressed or anxious" and exhibited "[n]o tangential thoughts." (Tr. 366.)

PAGE 9 – OPINION AND ORDER

- July 25, 2017: Plaintiff reported that her medication helps her "focus much better." (Tr. 367-68.)

- June 27, 2017: Plaintiff complained of "stress related to caring for her elderly parents" and reported that she had been helping "at Marylhurst [University]," meditating, reading her bible, and "[w]aiting to hear on disability." (Tr. 36; *see also* Tr. 407, Plaintiff reported that she "returned to Oregon in 2016 to help take care of her parents").

- November 20, 2017: Plaintiff reported that she was going to Virginia to visit her daughter, she planned to spend two months in Virginia, and she was "doing well" but did experience worsening depression when she tried a "weekend drug holiday[]." (Tr. 403.)

- January 25, 2018: Plaintiff reported that she had recently returned from her trip to Virginia, Effexor was "helping a lot with her symptoms," and she "occasionally forgets to take [her] medication and seems to function okay." (Tr. 405.)

- February 2, 2018: An examining psychologist noted that Plaintiff exhibited "well intact" thought processes, intact judgment, no gross defects in memory or concentration, and unremarkable speech patterns that "were consistent with her educational and cultural background." (Tr. 408.)

- February 2, 2018: Plaintiff reported that she lives with her elderly father; she was "working to restore her father's house and property"; she enjoys hiking, quilting, rug hooking, and playing the flute; she handles the

PAGE 10 – OPINION AND ORDER

> housekeeping chores, grocery shopping, and meal preparation; she attends church weekly; and she "goes walking regularly with a walking group." (Tr. 408.)

- February 2, 2018: An examining psychologist determined that Plaintiff had a "Full Scale I.Q. Score of 82, placing her overall level of functioning in the Low Average Range of intellectual disability"; ruled out a "specific learning disorder"; stated that it could be significant that "validity testing was not authorized during [Plaintiff's] current evaluation"; and noted that Plaintiff's exam "rais[ed] questions about whether inconsistent effort could potentially have been contributing to her weak test results." (Tr. 408-09.)

- March 22, 2018: Plaintiff's provider stated that Plaintiff's depression was "[m]ild" and Plaintiff reported that her ADHD medication "works well." (Tr. 436.)

- April 5, 2018: Plaintiff reported that she "recently moved to care for [her] father" and was "working on exercises and staying busy with yard work." (Tr. 413.)

- August 30, 2018: Plaintiff reported that she recently spent two months in Virginia visiting her daughter, Plaintiff's exam revealed that her behavior, mood, affect, orientation, judgment, insight, memory, attention, concentration, and thought content were all within normal limits, and Plaintiff's provider noted that Plaintiff's medications had "been working well." (Tr. 495-96.)

PAGE 11 – OPINION AND ORDER

- September 13, 2018: Plaintiff reported that her medication "helps tremendously with her ADHD symptoms," she was "feeling well," and she "continue[d] to do well on her Effexor . . . for anxiety." (Tr. 501.)

Given this evidence, it was reasonable for the ALJ to discount Plaintiff's testimony based on record evidence showing improvement in her mental health symptoms. Accordingly, the Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony. See Sims v. Berryhill, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [his] testimony as not credible"); Johaningmeier v. Berryhill, No. 3:16-2027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing with the Commissioner that the ALJ did not commit harmful error in discounting the claimant's testimony because "the ALJ provided at least one other clear and convincing reason").

## II.   SENTENCE SIX REMAND

Plaintiff argues that the Court should remand her case to the ALJ for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g), because she submitted new evidence to the Appeal Council that "ha[s] a reasonable possibility of changing the outcome of the case because it [shows] that Plaintiff's deficits in learning, memory, and some areas of language were of [sic] longstanding and in steady decline since 2014, without successful treatment[.]" (Pl.'s Opening Br. at 9.) Plaintiff's new evidence is a report that an examining neuropsychologist, Katrin Beene, Psy. D. ("Dr. Beene"), completed on November 4, 2019, five months after the ALJ issued her decision.

///

///

PAGE 12 – OPINION AND ORDER

### A.   Applicable Law

Section 405(g) provides that a court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material, and that there is good cause for the failure to incorporate such evidence into the record in the prior proceeding." 42 U.S.C. § 405(g). To obtain a remand under sentence six, a plaintiff must show that "there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (quoting *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1983)).

### B.   Dr. Beene's Opinion

Dr. Beene evaluated Plaintiff on September 11, 2019 and submitted her opinion on November 4, 2019 regarding Plaintiff's "report of longstanding cognitive dysfunction with a question of more recent decline." (Tr. 13-22.) Dr. Beene's opinion was based on Plaintiff's clinical interview, Plaintiff's daughter's phone interview, Plaintiff's medical records, and Plaintiff's test results. Dr. Beene concluded that Plaintiff "appear[ed] to meet [the] criteria for at least a mild level cognitive disorder at this time," there was "concern for interim cognitive decline," and many aspects of Plaintiff's "behavioral functioning (suggesting significant attentional and executive dysfunction) appear consistent with a neurodevelopmental disorder, such as ADHD." (Tr. 18.)

Dr. Beene's diagnoses included an unspecified "[m]ild" neurocognitive disorder, unspecified ADHD, recurrent major depressive disorder "in partial remission," and a generalized anxiety disorder. (Tr. 18.) Dr. Beene encouraged Plaintiff to "remain as cognitively, socially, and physically active as possible for [her] overall health and well-being," advised Plaintiff to "consider individual or group counseling," and provided "tips of benefit," strategies, and

PAGE 13 – OPINION AND ORDER

recommendations to help Plaintiff organize her responsibilities, optimize Plaintiff's cognitive efficiency, and "assist with inefficient or slowed problem solving, particularly in a novel situation." (Tr. 18-19.) Dr. Beene's recommendations included maintaining a familiar routine and structure to daily activities and focusing on one task at a time to minimize distractions. (Tr. 18.)

### C. Analysis

The Court concludes that Plaintiff has not demonstrated that there is a reasonable possibility that Dr. Beene's report would have changed the outcome of the ALJ's decision. *See Miller v. Berryhill*, 732 F. App'x 526, 529 (9th Cir. 2018) (declining to remand a case pursuant to sentence six because the claimant had "not shown the requisite reasonable possibility that the new evidence would have altered the ALJ's decision," and noting that the new medical evidence did not "undermine the ALJ's reasons for finding [the claimant's] testimony to be non-credible").

Plaintiff argues that Dr. Beene's report undermines the ALJ's decision to discount Plaintiff's testimony based on evidence showing that her symptoms improved with treatment. (*See* Pl.'s Reply Br. at 2, "Dr. Beene's opinion warrants remand under sentence six for further administrative proceedings because [it] demonstrates that treatment was not effective at halting or minimizing Plaintiff's cognitive decline and dysfunction."). As demonstrated above, the ALJ's interpretation of the record was rational, as there is ample evidence in the record of improvement and effective treatment. (*See, e.g.*, Tr. 327, Plaintiff reported that she had "been coming along nicely," she was "happier [and] less anxious," she "functions well with [her] current medication Vyvanse," and her medication "significantly improved [her] self-management and organization"; Tr. 405, Plaintiff reported that she had returned from a two-month trip, Effexor was "helping a lot with her symptoms," and she "occasionally forgets to take [her]

PAGE 14 – OPINION AND ORDER

medication and [still] seems to function okay"; Tr. 501, Plaintiff reported that her medication "helps tremendously with her ADHD symptoms," she was "feeling well," and she "continue[d] to do well on her Effexor . . . for anxiety"). In addition, Plaintiff does not address the other reasons and evidence the ALJ cited in support of her decision to discount Plaintiff's testimony. The Court finds that there is not a reasonable possibility that Dr. Beene's report, which is based on a one-time examination and in part on Plaintiff's testimony, would have changed the outcome of the ALJ's subjective symptom analysis.

Furthermore, in denying Plaintiff's DIB application and formulating Plaintiff's RFC and the VE hypothetical, the ALJ relied in large part on the opinions of (1) the non-examining state agency psychologists, Joshua Boyd, Psy.D ("Dr. Boyd"), and Scott Kaper, Ph.D. ("Dr. Kaper"); and (2) an examining clinical psychologist, Donna Wicher, Ph.D. ("Dr. Wicher"), who evaluated Plaintiff in 2018, reviewed Plaintiff's medical records and prior neuropsychological and psychiatric evaluations, conducted a clinical interview, and administered tests. (*See* Tr. 36-37, the ALJ assigned great weight to portions of Drs. Boyd, Kaper, and Wicher's opinions, explained how she accounted for portions of Drs. Boyd, Kaper, and Wicher's opinions in formulating Plaintiff's RFC, and described what evidence supported and detracted from portions of Drs. Boyd, Kaper, and Wicher's opinions). Plaintiff does not challenge the ALJ's evaluation of Drs. Boyd, Kaper, and Wicher's opinions in this appeal. Given the weight of the medical evidence the ALJ already considered, it unlikely that Dr. Beene's evaluation would change the outcome of the ALJ's decision.

In sum, the Court declines Plaintiff's request to remand this case pursuant to sentence six because she has not met her burden of demonstrating that there is a reasonable possibility that Dr. Beene's opinion would have changed the ALJ's decision about whether Plaintiff was

PAGE 15 – OPINION AND ORDER

disabled between December 19, 2016 and June 5, 2019.[3] See *Denison v. Berryhill*, No. 16-6047, 2017 WL 3592454, at \*5 (W.D. Wash. Aug. 21, 2017) (declining to remand under sentence six because there was "no reasonable possibility" that the claimant's doctor's addendum would have changed the outcome of the ALJ's decision, and noting that even if the doctor's addendum "had been considered under sentence four, it would not have divested the ALJ's decision of the support of substantial evidence"); *see also Johnson v. Berryhill*, 708 F. App'x 345, 346 (9th Cir. 2017) (finding that claimant's new medical opinion evidence submitted to the Appeals Council "did not undermine the substantial evidence upon which the ALJ based []his decision," and noting that the doctor relied on pre-decision evidence that "other medical providers already evaluated").

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 1st day of February, 2021.

*Stacie F. Beckerman*

————————————————
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[3] Plaintiff's insured status does not expire until December 31, 2021. (Tr. 20.) Thus, as the Appeals Council noted, Plaintiff could have filed a new application asking the Social Security Administration to consider if she was disabled after June 5, 2019, the day the ALJ issued her decision. (Tr. 2.)